

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| STEPHEN ANTHONY WALKER, | § | No. 08-13-00239-CR |
| Appellant, | § | Appeal from the |
| v. | § | 213th Judicial District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC# 1216371D) |
| | § | |

## **O P I N I O N**

Stephen Anthony Walker appeals his conviction for aggravated assault with a deadly weapon. In three issues, Walker complains of the trial court's rulings on his objections to remarks made by the prosecutor during closing arguments. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Walker was indicted for assaulting his girlfriend's son, Steven Bryce, with a knife following a physical altercation with Bryce's mother. At trial, Bryce testified that, when he called 911 to report Walker had choked his mother, Walker: (1) told him he was not going back to jail; (2) smashed the phone against the wall; (3) slashed him across the neck with a knife; and (4) fled the scene. Walker conceded he injured Bryce but disputed the notion he did so intentionally. During opening arguments, defense counsel told the jurors the incident was an accident:

But it was at that time that Mr. Walker decided he wanted away from the situation. And as he was trying to leave, Mr. Bryce was got -- tried to stop him from leaving or was blocking his path and he accidentally cut him. Now, Mr. Walker, he didn't intend cut him. In fact, he was so devastated that the fact this accident had happened, and he was so upset by this, he left and tried to commit suicide in the woods.

To counter Walker's theory and bolster its case, the State called the responding and investigating officers as witnesses and introduced into evidence audio recordings of the 911 calls and photographs of the injuries sustained by Bryce and his mother. Walker did not testify, nor did he introduce any evidence.

The issues in this appeal arise from three exchanges that occurred during closing arguments. The first arose when the parties were arguing the merits of the State's case. In contending the evidence proved Walker intended to cut Bryce, the prosecutor drew the jury's attention to the 911 calls, the photographs, and Walker's suicide attempt. Counsel countered that the evidence actually told a different story:

> Look at the evidence. It's visual evidence. Okay. And the problem here is Steve Walker is, in fact, responsible for Steve Bryce's injuries. In a civil court there wouldn't be any question. Okay. Because he was careless, because he instigated the physical action that happened. Now, did he have any intent -- did he have any intent to cause him injury? No. Did he have any knowledge that he was causing him injury? No. Because when he realized it he panicked and flew into a suicidal whatever you want to call it.
> The -- *you have gotten partial pictures in this case*. The State -- the State dwells on the fact that he, quote, ran away. He ran a couple hundred feet and immobilized himself with a knife. His -- his shock and horror over it was enough that he turned the knife on himself. Okay. [Emphasis added].

Apparently misconstruing the italicized language above as an accusation that the State had failed to turn over all evidence in its possession, the prosecutor responded:

> Really? Really? Let me tell you this. The State of Texas has an open file policy. And the Defense has everything the State of Texas has. So if he wants to tell you what you received is partial pictures, he could have introduced any other

pictures he wanted to if they exist.

Counsel immediately objected on the basis that the prosecutor's remark impermissible shifted the burden of proof and commented on Walker's failure to testify. The trial court overruled the objection, and the prosecutor—continuing to labor under the misimpression that defense counsel's "partial pictures" comment was literal—told the jury that she had "no idea what he [was] talking about" "[b]ecause he [had] a copy of every picture taken in this case."

The second exchange transpired minutes later when the prosecutor was reminding the jury that Walker, not Bryce, was on trial. The prosecutor's comments regarding Walker's state of mind on the day in question, including that he may have been inebriated, led to this colloquy:

> [PROSECUTOR]: Who was agitated? Who was angry? Who was drunk? Stephen Walker.
>
> [DEFENSE COUNSEL]: I object, outside the record.
>
> [TRIAL COURT]: Sustained.
>
> [DEFENSE COUNSEL]: Can we have the jury instructed to disregard?
>
> [TRIAL COURT]: Disregard the last comment of the prosecutor about drunk.
>
> [DEFENSE COUNSEL]: Move for mistrial.
>
> [TRIAL COURT]: Denied.
>
> [PROSECUTOR]: There was testimony from the officers that Stephen Walker smelled of alcohol.
>
> [DEFENSE COUNSEL]: I object. That's outside the record. There was none.
>
> [TRIAL COURT]: Sustained.
>
> [DEFENSE COUNSEL]: Can we have the jury instructed to disregard?
>
> [TRIAL COURT]: And the jury shall disregard that comment.

3

[DEFENSE COUNSEL]:   Move for mistrial.

[TRIAL COURT]:   Denied.

The prosecutor moved on to summarize the events surrounding the incident.

The third exchange occurred when the prosecutor implored the jury to reject the theory that Walker attempted suicide because he was upset.   In asserting that Walker tried to kill himself primarily to avoid jail, the prosecutor remarked that Walker did not regret his actions:

> Remember the situation we talked about in voir dire, when you are mad and you walk in the room and slam the door and a picture falls.   You have broken the picture.   Well, you regret it after it happened.   But it doesn't make the fact that you did the action any different.   Maybe -- maybe he regretted what he did after it happened.   I submit to you he didn't.   All he cared about was himself.

Counsel immediately objected on the following grounds:

> That's a comment on the Defendant's failure to testify.   It's a question that only the Defendant can answer.   It's a comment on lack of remorse . . . .

The trial court sustained the objection and instructed the jury to "disregard the argument concerning the accused's failure to testify" but denied the request for a mistrial.

The jury found Walker guilty of the charged offense and assessed punishment at 15 years' confinement.   The trial court rendered judgment on the jury's verdict.

## COMMENT ON FAILURE TO TESTIFY

Walker's first and third issues concern his constitutional right against compelled self-incrimination.   In his first issue, Walker asserts the trial court should have sustained his objection to the prosecutor's "pictures" remark because it was improper jury argument.   In his third issue, Walker claims the trial court erred in denying his motion for a mistrial when the prosecutor remarked that he lacked remorse for his actions.   According to Walker, "the improper comments "were targeted to degrade . . . [his] . . . character . . . [and] made it much less likely for

4

the jury to accept the Defense's theory that this could have been an accident." Although Walker contends he was harmed by the cumulative effect of the prosecutor's remarks, his complaints are legally distinct. Because of that distinction, we will analyze them separately.

### 1. "Pictures" Remark

In his first issue, Walker contends the prosecution's remark that "he could have introduced any other pictures he wanted to" amounted to an improper comment on his failure to testify. We disagree.

### *Standard of Review*

We review a trial court's ruling on an objection based on an improper jury argument for an abuse of discretion. *Davis v. State*, 329 S.W.3d 798, 825 (Tex.Crim.App. 2010).

### *Applicable Law*

Proper jury argument generally falls within one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to argument of opposing counsel; and (4) pleas for law enforcement. *Id.* at 821. Argument that the defendant failed to testify does not fall into any of these categories and violates a defendant's constitutional and statutory rights against compelled self-incrimination. *Randolph v. State*, 353 S.W.3d 887, 891 n.8 (Tex.Crim.App. 2011)(*citing* U.S. CONST. amend. V; TEX.CONST. art. I, § 10; TEX.CODE CRIM.PROC. art. 38.08).

To determine whether prosecutorial argument rises to that level, we view the argument from the jury's standpoint and in the context in which it was made, and we resolve any ambiguities in its language in favor of it being a permissible argument. *Randolph*, 353 S.W.3d at 891. If the language used by the prosecution was so clear and unequivocal that the jury could reach no

conclusion other than the State intended to comment on the defendant's failure to testify, the argument is improper. *Randolph*, 353 S.W.3d at 891. But "[i]f the language might reasonably be construed as merely an implied or indirect allusion, there is no violation." *Id.* Nor is there any violation "if the language can reasonably be construed to refer to appellant's failure to produce evidence other than his own testimony[.]" *Patrick v. State*, 906 S.W.2d 481, 491 (Tex.Crim.App. 1995), *cert. denied*, 517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996). Indeed, "a party may always comment on the fact that the opponent failed to call an available witness and then argue 'Don't you know, if Mr. X had anything favorable to say, my opponent would have called him.'" *Pope v. State*, 207 S.W.3d 352, 365 & n.51 (Tex.Crim.App. 2006).

### *Discussion*

Viewed in context and from the jury's perspective, the remark in issue was not a direct comment on Walker's failure to testify, nor did it otherwise draw the jury's attention to the absence of statements from him or refer to a particular aspect of the case that only his testimony could refute. Nothing in the language used by the prosecutor suggests that Walker should have testified or that the jury necessarily and naturally construed it as referring to his choice to remain silent. Rather, the prosecutor's remark can be reasonable construed as a comment on, or summation of, the evidence presented at trial or as a comment on Walker's failure to produce any evidence at trial. To be considered improper, the remark would have to necessarily and naturally steer the jury to conclude that the prosecutor was implying that the absence of controverting evidence was due to Walker's failure to testify. That is neither a clear nor a necessary implication from the prosecutor's remark.

Walker asserts the remark was improper for two reasons, but his reasoning is not

persuasive. First, he claims the remark constituted a direct comment on his failure to present an overall case and, thus, impermissibly shifted the burden of proof to him. But jury argument pointing out that the defendant has failed to present evidence in his favor does not shift the burden of proof but instead summarizes the state of the evidence and is a reasonable deduction from the evidence. *See Patrick*, 906 S.W.2d at 491; *Caron v. State*, 162 S.W.3d 614, 618 (Tex.App.--Houston [14th Dist.] 2005, no pet.)(holding that prosecutor's statement that "[i]f there is something out there that is going to exonerate you, you want to make it known" was permissible jury argument); *Baines v. State*, 401 S.W.3d 104, 109 (Tex.App.--Houston [14th Dist.] 2011, no pet.)(holding that prosecutor's statement that defendant "has the same subpoena power" and could have called witnesses to testify in his defense was "a permissible remark about appellant's failure to produce evidence in his favor on his defense and did not shift the burden of proof to appellant"). Walker contends the remark shifted the burden of proof to him in this case because "[t]he State was not defending a particular piece of evidence or testimony, but the entirety of its case." In support of the proposition that a prosecutor cannot comment on a defendant's failure to present evidence unless rebutting the defense's challenge to "a particular piece of the State's case or a certain witness or a certain item of evidence[,"] Walker cites *Jackson v. State*, 17 S.W.3d 664 (Tex.Crim.App. 2000). Walker's reliance on *Jackson* is misplaced.

In *Jackson*, the appellant argued the prosecution had impermissibly shifted the burden of proof to him when telling the jury during closing argument that the defense "would have called its expert to the stand if it had seriously disputed the State's evidence." 17 S.W.3d at 674. The court disagreed, holding that the prosecutor's reference to the defendant's failure to produce expert testimony in support of his assertions that the State's DNA evidence was lacking was proper jury

7

argument because it was merely a response to the defense's assertion. *Jackson*, 17 S.W.3d at 674. In so holding, the court recognized that it is *permissible* argument for the prosecutor to answer the arguments of opposing counsel. *Id*. The court also held the prosecutor's argument did not amount to a prohibited reference to the appellant's failure to testify. *Id*. Contrary to Walker's assertion, the court did not hold that the prosecution is forbidden to comment on a defendant's failure to produce evidence in any circumstance other than in response to the defense's argument attacking a specific piece of the State's evidence. Indeed, the court has observed that it is permissible for the prosecution to comment on the defendant's failure to testify if the comment is a "fair response" to the defendant's claim that he is not responsible because the result was an accident. *See Randolph*, 353 S.W.3d at 892-93.

Second, Walker alleges the prosecutor's remark exacerbated the harm he suffered because it "incorrectly imparted to the jury that [he] had an unfettered right to introduce whatever he wanted regardless of the rules of evidence." But Walker cites no authority for his assertion, nor does he pause to explain how that inference unfairly shifted the burden of proof to him or constituted a direct comment on his failure to testify.

We conclude the trial court did not abuse its discretion by overruling Walker's objection to the prosecutor's remark that "he could have introduced any other pictures he wanted to if they exist."

Walker's first issue is overruled.

### 2. "Remorse" Remark

In his third issue, Walker argues the prosecution's argument that he lacked remorse for his actions constituted an improper commented on his failure to testify because only his testimony

could refute that notion. We disagree.

### *Standard of Review*

We review the trial court's denial of a motion for mistrial for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 292 (Tex.Crim.App. 2010), *cert. denied*, ⸺ U.S. ⸺, 131 S.Ct. 3030, 180 L.Ed.2d 846 (2011). If the trial court's ruling is within the zone of reasonable disagreement, it must be upheld. *Id*.

### *Applicable Law*

A mistrial is required only in extreme circumstances where the prejudice is incurable. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004). Prejudice is incurable when the objectionable material is clearly calculated to inflame the minds of the jury or was of such a damaging character as to suggest it would be impossible to remove the harmful impression from the jurors' minds. *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999); *Rojas v. State*, 986 S.W.2d 241, 250 (Tex.Crim.App. 1998).

To determine whether prejudice is incurable, we apply a three-factor balancing test. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App. 1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). We look at: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the remark); (2) the curative measures taken (the efficacy of any cautionary instruction by the trial judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Id*. In evaluating the severity of the misconduct, we assess "whether [the] jury argument is extreme or manifestly improper [by] look[ing] at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial."

9

*Brown v. State*, 270 S.W.3d 564, 573 (Tex.Crim.App. 2008).   [Internal quotation omitted].

### *Discussion*

Assuming the prosecutor's "remorse" remark was improper,[1] Walker has failed to establish it warranted a mistrial.   The remark, when analyzed under the three-factor test articulated in *Mosley,* is not so prejudicial as to be incurable.

The magnitude of the prejudicial effect of the remark was minimal.   The prosecutor was not inviting the jury to observe Walker's lack of remorse in the courtroom.   Rather, she was arguing to them that the evidence indicated Walker lacked remorse following the incident, which she could fairly do in rebutting Walker's claim that Bryce's injuries were the result of an accident. The evidence adduced at trial supported the prosecutor's argument.   No witness testified that Walker inquired about Bryce's welfare, and Walker does not argue to the contrary.   Viewed in its proper context, the prosecutor's remark was limited to Walker's behavior following the incident, and the concept of remorse was not mentioned again.   There is simply no connection between Walker's behavior at the time of the incident and his failure to testify at trial more than two years later.

There is nothing in the record suggesting the trial court's instructions to disregard did not cure the prosecutor's remark.   Following the prosecutor's remark, the trial court immediately applied the curative measure requested by Walker—an instruction to disregard.   A prompt instruction to disregard ordinarily cures any harm from improper argument.   *Wesbrook v. State*,

---

[1] The State contends the trial court erred in sustaining Walker's objection to the prosecutor's remark because it "was a proper response to the argument of defense counsel, and referred to the facts of the offense itself, not to [Walker]'s present-sense lack of remorse at the time of trial."   As the State correctly points out, a prosecutor may comment about an appellant's lack of remorse *at the time of the offense*, if the comment is supported by the evidence, but may not comment about an appellant's lack of *present-sense* remorse.   *See Snowden v. State*, 353 S.W.3d 815, 823-25 (Tex.Crim.App. 2011).   But the prosecution never asked the trial court to reconsider its ruling on this, or any other, basis.   Because the State did not raise its complaint at trial, we will not address it on appeal.   *See* TEX.R.APP.P. 33.1.

29 S.W.3d 103, 115-16 (Tex.Crim.App. 2000). Moreover, we generally presume the jury will obey a trial court's instruction to disregard. *Id*. at 116. Walker asserts we cannot rely on this presumption because the prosecutor's "[r]epeated comments on [his] failure to testify and improper comments of evidence outside of the record … shows that the attempts of the trial court to cure the prejudice were in vain." But beyond making this assertion, Walker does not explain how the instruction was ineffective. Nor does he direct our attention to any other portion of the record suggesting it was impossible to remove the harmful impression from the jurors' minds. Contrary to Walker's assertion, the remarks here were not so blatant as to render the presumption inapplicable. Therefore, we must presume the trial court's admonishments were effective. *See Coble*, 330 S.W.3d at 292; *see also Young v. State*, 137 S.W.3d 65, 69 (Tex.Crim.App. 2004)(grant of mistrial motion should be reserved for those cases in which an objection could not have prevented, and an instruction to disregard could not have cured, the prejudice stemming from an event at trial); *Caldwell v. State*, 818 S.W.2d 790, 799-800 (Tex.Crim.App. 1991), *overruled on other grounds by Castillo v. State*, 913 S.W.2d 529, 532-35 (Tex.Crim.App. 1995)(any improper jury argument by State alluding to defendant's lack of remorse was cured by trial court's instruction to disregard).

The certainty of Walker's conviction is high absent the misconduct. As mentioned above, Walker never disputed he cut Bryce's throat. Instead, he claimed to have injured Bryce accidently while fleeing. But, as the trier of fact, the jury was free to reject Walker's theory, and a rational jury could have found that Walker intended to cut Bryce based on how Walker used the knife, which was similar to a box cutter in that it had a blunt edge and a sharp edge, and how he behaved after cutting Bryce. Bryce testified that, before Walker attacked him, Walker mimicked

11

slicing his own throat with the knife's dull edge. When asked to relate what occurred immediately thereafter, Bryce provided the following harrowing account:

[BRYCE]: All I remember is him pulling his arm back and slicing my throat from back and forth. And then –

[PROSECUTOR]: Where were you standing in relation to him?

[BRYCE]: I was still standing straight in front of him.

[PROSECUTOR]: Could he see you?

[BRYCE]: Yes.

[PROSECUTOR]: Were you trying -- was he trying to leave or anything like that?

[BRYCE]: No. Because I was -- he had open stairwell behind him. He had access to leave and I wouldn't have.

.          .          .

[PROSECUTOR]: What kind of motion did he do when he struck you with the knife?

[BRYCE]: Like a swing motion backwards to forwards.

[PROSECUTOR]: So it started in the back?

[BRYCE]: Yes.

[PROSECUTOR]: Were you standing directly in front of him?

[BRYCE]: Yes. I was standing directly in front of him.

[PROSECUTOR]: As soon as he cut you what did you do?

[BRYCE]: He vanished. He disappeared.

[PROSECUTOR]: Did he offer you any assistance?

[BRYCE]: No.

[PROSECUTOR]: Is there any way he would not have known that he had cut

12

you?

[BRYCE]: No, ma'am.

[PROSECUTOR]: Why not?

[BRYCE]: Because you knew -- how he disappeared and how he vanished, you knew he knew what he did.

The State adduced additional evidence undermining Walker's theory. One of the responding officers testified that, that based on his investigation, he did not think the incident was an accident. The evidence was more than sufficient to sustain Walker's conviction.

We conclude the trial court did not abuse its discretion in denying Walker's motion for mistrial.

Walker's third issue is overruled.

## JURY ARGUMENT NOT SUPPORTED BY EVIDENCE

In his second issue, Walker argues the prosecutor's remarks about his alleged inebriation on the day of the incident were calculated to inflame the jury by "paint[ing] a picture of a 'typical' abusive boyfriend . . . who would hurt anyone that stood in his way." Because there was no evidence Walker was inebriated on the day he attacked Bryce, we agree the prosecutor's remarks were manifestly improper.[2] *See Borjan v. State*, 787 S.W.2d 53, 57 (Tex.Crim.App. 1990)("[A] prosecutor may not use closing argument to get evidence before the jury which is outside the record and prejudicial to the accused."). But we disagree with Walker's assertion that the trial court erred by denying his motion for mistrial.

### *Discussion*

The prosecutor's remarks, when analyzed under the three-factor test articulated in *Mosley,*

---

[2] On appeal, the State agrees the prosecutor's remarks were improper because they were not supported by the evidence.

13

are not so prejudicial as to be incurable.

The magnitude of the prejudicial effect of the remarks was minimal. Although there was no evidence Walker was inebriated on the day he attacked Bryce, there was evidence Walker drank alcohol and became aggressive when drinking. Bryce testified that Walker's aggressive behavior while drinking was the source of past conflicts between them. Bryce also testified that he believed his mother was not safe in Walker's presence. In addition, there was evidence of Walker's past aggressive behavior. One of the responding officers testified that, when he spoke to Walker on the phone, Walker disclosed a previous assault conviction. Moreover, the trial court immediately instructed the jury to disregard the prosecutor's remarks, and the prosecutor did not mention Walker's alleged inebriation during the remainder of her argument. When viewed in the entirety of the prosecution's closing argument, we cannot conclude that there was a willful and calculated effort to deprive Walker of a fair and impartial trial.

There is nothing in the record suggesting the trial court's instructions to disregard did not cure the prosecutor's prejudicial remarks. Following the prosecutor's remarks, the trial court immediately applied the curative measures requested by Walker—instructions to disregard. As noted above, a prompt instruction to disregard ordinarily cures any harm from improper argument. Walker counters that the trial courts' repeated instructions to disregard prove its attempts to cure were disregarded. But beyond making this assertion, Walker does not explain how the instructions were ineffective. Nor does he direct our attention to any other portion of the record suggesting it was impossible to remove the harmful impression from the jurors' minds. Absent evidence to the contrary, we must presume the trial court's admonishments were effective.

The certainty of Walker's conviction is high absent the prosecutor's remarks. For the

14

reasons articulated above in our discussion of the prosecutor's "remorse" remark, we are confident a reasonable jury hearing the evidence in this case would have found Walker guilty irrespective of the prosecutor's remarks.

We conclude that the trial court did not abuse its discretion in denying Walker's motion for mistrial.

Walker's second issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

March 25, 2015

                                    YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)